STATE v. CITY OF ST. PETERSBURG.

157 So. 641.
Opinion Filed November 26, 1934.

*Chester B. McMullen,* State Attorney, *Erle B. Askew* and *Charles J. Schuh,* for Appellant;

*W. F. Way,* and *Carroll R. Runyon,* for Appellee.

Davis, C. J.—The City of St. Petersburg is a municipality existing under and by virtue of Chapter 6772, Special Acts 1913, and Acts amendatory thereof. By virtue of its charter and Chapter 6864 (now Section 3016 C. G. L., 1906 R. G. S.) and also by virtue of Chapter 13377, Special Acts 1927, the City of St. Petersburg issued and sold to *bona fide* purchasers, certain certificates of indebtedness providing for the special assessment of the cost of certain improvements against specially benefited properties in the city against which it was given and acquired a specific lien. The certificates, which bore the seal of the city, provided that the payment of said certificates and the annual interest thereon should be and was thereby guaranteed by the City of St. Petersburg. Such certificates were conditioned, however, that the redemption of same by the city should not discharge the liens of the special assessment against the properties described in the certificates. And it was specifically provided therein that the certificate should be redeemable by the City of St. Petersburg at the option of the holder of the certificates, and that upon default in payment the holders of the certificates might consider the whole of the

sums expressed in the certificates immediately due and payable.

The present appeal is from a bond validation decree entered by the Circuit Court pursuant to Sections 5106 C. G. L., 3296 R. G. S., *et seq.* The decree adjudicated the issuance of $1,000,000.00 proposed refunding bonds projected by the appellee city as a means of refunding certificates of indebtedness of the City of St. Petersburg of the character above specified, to be valid refunding bonds within the purview of Section 6 of Article IX of the Constitution, as amended, and the refunding Acts of the Legislature under which the proceedings for issuance of same had been had. (Chapter 15505, Acts 1931, and Chapter 15772, Acts of 1931). The principal contention argued by appellant in support of a reversal of the decree is that said bonds are not refunding bonds that may be issued without a referendum vote thereon, and are therefore not authorized as refunding bonds by Section 6 of Article IX of the Constitution as amended in 1930. That no approving vote has been sought or had is conceded on the face of the record.

The record shows that all of the certificates of indebtedness (denominated as "Guaranty Improvement Certificates") issued and sold by the City of St. Petersburg to defray the cost of public improvements, which are in this proceeding proposed to be refunded by the bonds herein validated, are certificates of indebtedness the payment of which has been guaranteed under seal by the city in the event of a default in payment thereof by the owners of property against which the same constituted a lien as therein specified.

It also is made to appear that the City of St. Petersburg at the present date has a bonded debt in excess of $21,000,000.00, represented by special and general improvement bonds exclusive of the guaranty improvement certifi-

cates; that in June, 1930, the city first failed to meet the sums falling due for principal and interest upon its said bond obligations, and that due to depressed financial and economic conditions that it would be unlikely able to pay is indebtedness should the strict letter of existing contracts be enforced by its creditors; that there are outstanding at the present time, inclusive of interest, the sum of $1,200,000.00 in Guaranty Improvement Certificates, of which sum the major portion is in litigation for the purpose of procuring judgment for same against the City of St. Petersburg; that it is quite impossible to pay the threatened judgments out of the taxable resources of the city, and that the refunding and readjustment of said obligations is imperative both for the protection of the holders thereof and the stability of the city's credit.

Accordingly an adjustment proposal, later amended in minor details but in legal effect constituting the basis for the city's issuance of the refunding bonds here in controversy, was adopted by the City Council as the governing authority of the City of St. Petersburg. The proposal is as follows:

"1. The City will issue and deliver to the holders of Guaranty Improvement Certificates, Refunding Bonds in exchange for said certificates, conforming in all respects to the provisions of this proposal, in the same principal amounts as the said certificates surrendered, maturing 25 years after the date of issuance.

"(a) Said bonds to be validated in accordance with law.

"(b) Bonds herein issued and the procedure precedent to the issuance of said bonds shall be subject to the approval of the Counsel for the holders of the majority of said Guaranty Improvement Certificates.

"2—Interest. The bonds shall bear interest at the rate of 3% per annum from the 1st day of October, 1933, until

and including October 1, 1938; 4% from October 1, 1938, to October 1, 1940; 5% from October 1, 1940, to date of maturity; which said interest shall be payable semi-annually and represented by coupons attached to said bonds.

"3. The City of St. Petersburg shall, commencing with the taxable year 1933, annually levy a tax upon all the taxable property within the corporate limits of the City of St. Petersburg, sufficient to pay the interest due and to become due upon said Refunding Bonds issued under this proposal.

"4. Delinquent Interest Certificates. The delinquent interest due and to become due upon said certificates of indebtedness to and including October 1, 1935, shall be evidenced by delinquent interest certificates in the face sum and amount of all interest due to said holders of said Guaranty Improvement Certificates; which said delinquent interest certificates shall not bear interest and shall be payable exclusively out of the collections from the principal and interest of said certificates so exchanged by the holders thereof for Refunding Bonds; the delivery of said delinquent interest certificates to be made at the time of the exchange of the certificates by the holders thereof for Refunding Bonds.

"5. All certificates of indebtedness received by the City in exchange for said Refunding Bonds so issued shall be placed in a sinking fund created solely for the purpose of retiring the delinquent interest due upon said certificates and to become due October 1, 1935, at the present contract rate, and the retirement of the Refunding Bonds so issued under this Proposal, which said funds shall be kept separate and apart from all other funds of the City of St. Petersburg, and the collections from said certificates so placed in said fund shall be used in the following manner;

"(a) The payment of said delinquent interest, due to the holders of the delinquent interest certificates hereinafter referred to, and upon the full satisfaction of the said delinquent interest certificates, the collection from said Guaranty Improvement certificates shall be used for the retirement of the said Refunding Bonds, at or prior to their maturity, provided specifically that the said delinquent interest shall be a first lien upon said fund and no collections from said certificates shall be used for principal retirements until said delinquent interest is fully satisfied.

"(b) It is further provided that after the satisfaction of said delinquent interest, before referred to, the municipal authorities shall invest said collections from said certificates in negotiable interest bonds of the United States Government, or Class 'A' bonds listed under the New York Stock Exchange, or shall deposit the same in depositaries where said bonds are payable.

"6. It is further proposed that the City of St. Petersburg will, commencing with the fiscal year 1940-41, levy annually an ad valorem tax in a sum sufficient to produce not less than 2% of the principal of the outstanding Refunding bonds of this issue, and the collections from said tax so levied shall be placed in the said sinking fund before referred to and invested as aforesaid for the exclusive purpose of retiring said principal due or to become due on said Refunding Bonds.

"7. It is further provided that said delinquent interest certificates may be accepted by the City in the payment of certificates of indebtedness exchanged by the holders thereof; provided, however, that said delinquent interest certificate shall be accepted at not less than the face amount thereof in payment of the face amount of said certificates, inclusive of interest.

"8. Refunding Bonds issued in exchange for said Guaranty Improvement Certificates may be accepted by the City in payment of Guaranty Improvement Certificates received by it and placed in said sinking fund before referred to, provided, however, that said Refunding Bonds shall not be accepted in payment of a greater sum due upon said certificates than the face amount of said bond and accrued interest shall represent.

"9. All Refunding Bonds shall be callable at any interest-paying date at par on the publication of notice to be provided for in the face of said bond.

"10. The Director of Finance of the City of St. Petersburg and his successors in office shall be created and constituted as Trustee for the purpose of carrying out the provisions of the sinking fund herein established.

"11. The holders of said delinquent interest certificates agrees to offer for sale, the said delinquent interest certificates to the public at 50 cents on the dollar of the face value of said certificates for a period of six months from the date of the receipt by them of the said certificates before referred to, and in order to facilitate the sale of said certificates at the said 50% discount, the delinquent certificate holder agrees immediately upon and contemporaneously with the acceptance of said delinquent interest certificates, to turn the same over to the Director of Finance as Trustee, for the purpose of selling the same to the general public, and it shall be the duty of said Trustee to make said certificates available for purchase by the public at the price stipulated at all times during the regular business hours at the City Hall, and it shall be the duty of said Trustee to account to and pay over to said delinquent certificate holders, such sums as may be collected by the sale of said certificates at the end of each month during the said term of six months, and at the end of the said six

months' period before referred to, the said Trustee shall deliver over to the depositor, all certificates remaining unpaid.

"12. Said delinquent certificates shall be sold by said Trustee to the public in the same ratio as the amount of said certificates deposited by one holder shall bear to the total number of certificates deposited under this refunding plan, that is to say, when the city shall have application for the purchase of delinquent interest certificates, it shall sell and deliver such pro-rata part of the certificates deposited by the holder as his total number of certificates shall bear to the whole number deposited. It shall be the duty of the Director of Finance, as such Trustee, to immediately cancel any such delinquent interest certificates or portion thereof sold by him, and said delinquent interest certificates so sold, shall be used solely for the purpose of paying interest and principal upon said Guaranty Improvement Liens held by the said sinking fund.

"13. Nothing herein shall prevent the certificate holder from later agreeing to accept less than 50 cents on the dollar for said delinquent interest certificates so held by him.

"14. It shall be the duty of the said Trustee to immediately at the end of the said six months' period referred to in paragraph 11 of this Agreement, to take such action as may be necessary either in law or in equity, to bring about and cause sufficient collections to come into said sinking fund to pay the delinquent interest certificates then remaining unpaid, and if the Trustee shall fail to collect sufficient sums from said certificates within three months from the termination of the six months' period referred to in paragraph 11, then the holders of Refunding Bonds shall have the right to foreclose any and all of said certificates remaining in said fund in the name of the City of St. Petersburg, for the benefit of all the outstanding delinquent in-

terest certificate holders and shall have the right to continue said foreclosure and enforcement of said certificates in the name of the City until the said delinquent interest certificates are fully satisfied. The cost and expense of said foreclosure and enforcement of said certificates shall be borne from the proceeds of the collections from said certificates held by the fund.

"15. The purpose of this clause is to provide adequate assurance to the delinquent certificate holder of the payment of the said delinquent interest in the event the same is not paid within a period of nine months, but the provision shall not prevent the adoption of any alternate plan to accomplish the same result if the parties hereto mutually agree upon the same.

"16. In the event there is not sufficient sums of money in the sinking fund at the maturity of said Refunding Bonds, together with the accumulations from the collection of said liens and al valorem taxes levied for the purpose of retiring said bonds, the Municipality shall levy a tax upon all its taxaable property sufficient to pay the said deficit, if any.

"17. If any amendment to the Constitution shall be adopted prior to the delivering of the Refunding Bonds contemplated herein, which restricts or impairs the right of the City to levy taxes for said Refunding Bonds on any and all property subject to taxation by said City on January 1, 1933, or which in the opinion of the Counsel for the majority of the holders of said certificates precludes the City from issuing bonds having rights and remedies substantially as extensive and effective as the obligations represented by said certificates in existence on January 1, 1933, or which impairs the right of the City to levy and collect taxes under substantially the methods provided by

law at the time of the execution of this Agreement, then this Agreement shall be of no further force or effect.

"18. It shall be the duty of the Municipality to pass all necessary resolutions and ordinances to carry out the terms and provisions of this Agreement and to effect the adjustment of these obligations as required by law.

"19. The Director of Finance shall, as Trustee aforesaid, have the power and authority to purchase bonds of this issue on the open market with the proceeds in said sinking fund at any time in his opinion there is sufficient money therein to make said purchase of said bonds advantageous and beneficial to the fund, provided, however, said purchase of said bonds shall be after public notice of intention to purchase, and the lowest bid in response to said notice shall be accepted, except that the Director of Finance in his discretion as Trustee, may refuse to accept all bids so tendered if in his opinion the purchase of said bonds at the prices tendered would not be beneficial and advantageous to the fund. And further provided that if several tenders are received which equal the lowest bid and there is not sufficient money on hand to purchase all bonds tendered at said low bid price, the tenders shall receive preference in the order of their arrival in the hands of the Trustee. The Trustee shall not purchase any of said bonds for more than 80% of par and accrued interest thereon, and no such purchase of such bonds shall be made until the delinquent interest certificates issued under the terms and provisions of this agreement shall have been fully paid and satisfied.

"20. If in any event, under the terms and provisions of this agreement regarding the issuance and delivery of the Refunding Bonds herein contemplated, the issuance and delivery of the delinquent interest certificates and the receipt of the certificates of indebtedness to be surrendered

for refunding bonds are not completed on or before January 1, 1935, then this Agreement shall be without any force and effect and the parties shall be placed *in statu quo,* provided, however, this paragraph shall not affect the force and effect of paragraph 17 of this Proposal, but is for the purpose of allowing the withdrawal of the parties hereto in the event, after diligent effort by the parties hereof, the Agreement cannot be carried out."

It was to carry out said proposal as amended, that other resolutions were subsequently adopted proposing the issuance in due course of $1,000,000.00 Certificate Refunding Bonds to accomplish the purpose hereinbefore mentioned, the validity of which proposed issue of Certificate Refunding Bonds is the subject of this appeal.

The guaranty certificates of indebtedness proposed to be refunded are long term interest bearing certificates under seal importing a general liability of the city thereon, and are therefore "bonds" within the meaning and intent of that word as used in amended Section 6 of Article IX of the Constitution relating to the issuance of bonds and refunding bonds to refund the principal and interest of bonds already outstanding. Leonard v. Franklin, 84 Fla. 402, 93 Sou. Rep. 688; Advisory Opinion to Governor, 94 Fla. 967, 114 Sou. Rep. 850. That such instruments may be refunded under the general refunding Act and amended Section 6 of Article IX of the Constitution without an approving vote of the freeholder electors, is conclusively settled in the affirmative by Sullivan v. City of Tampa, 101 Fla. 298, 134 Sou. Rep. 211.

We find that the procedure had, which was invoked by resolution instead of by ordinance, in accord with the applicable law authorizing refunding bonds to be issued by the City of St. Petersburg, notwithstanding the apparent ambiguities between the general law and certain charter

provisions bearing on the subject, and therefore overrule the assignments of error predicated upon that feature of the proceedings as a ground of objection.

It is accordingly considered, adjudged and decreed by this Court that the validation decree of the Circuit Court in manner and form as entered and appealed from, be and the same is hereby affirmed, and that a mandate in conformity with this judgment do issue within ten days as provided for by Section 5108 C. G. L. (Chapter 11854, Acts 1927) if no petition for rehearing has been filed within that period.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.