C. B. COLEY ET AL. v. ATLANTIC COAST LINE R. R. ET AL.

(Filed 4 March, 1942.)

1. **Master and Servant § 9—**

Employees of a shop may sue to enjoin an arbitrary or fraudulent modification or delimitation of a collective bargaining agreement made for their benefit by and between the employer and the duly authorized representatives of their craft or class.

2. **Master and Servant § 2—**

The Brotherhood Railway Carmen of America, certified as the duly authorized representative of a craft or class of carmen, helpers and apprentices, has the power, by agreement with the Railroad Company, to create seniority rights for the employees it represents, and, by the same token, to modify these rights in good faith in the interest of the larger good, such agreements being within the scope of collective bargaining.

**3. Same—Evidence held insufficient to show willfullness or maliciousness on part of bargaining agency in failing to act on employees' protest to supplemental agreement delimiting seniority rights.**

A collective bargaining agreement, stipulating seniority rights, was reached by the Railroad Company and the Brotherhood which was the duly authorized bargaining agency of the employees. Thereafter a supplemental agreement, delimiting the prior agreement in respect to seniority rights, was entered into. Plaintiff employees instituted this suit against the Railroad Company and the lodge of the Brotherhood to restrain the supplementary agreement from being put into effect upon their contentions that the lodge, without the knowledge or connivance of the Railroad Company, acted fraudulently or arbitrarily in adopting the roster of seniority contained in the supplementary agreement. The only evidence of *mala fides* on the part of the lodge was its failure to hear the protests filed by plaintiffs, but this action was instituted less than thirty days after the filing of the protest before any action had been taken thereon. *Held:* The evidence is insufficient to show willful neglect or maliciousness on the part of the lodge necessary to sustain plaintiffs' cause of action, and therefore the temporary restraining order was properly dissolved.

BARNHILL, J., not sitting.

APPEAL by plaintiffs from *Stevens, J.,* at October-November Term, 1941, of WILSON.

Civil action by a number of employees of the Atlantic Coast Line Railroad Company for mandatory injunction to compel revision of seniority roster or to restrain defendants from putting into effect roster as published.

The controlling allegations and agreed facts follow:

1. On 25 June, 1938, the Brotherhood Railway Carmen of America, operating through the Railway Employees Department, American Federation of Labor, was certified by the National Mediation Board as the duly authorized representative of the craft or class of carmen, their helpers and apprentices, employees of the Atlantic Coast Line Railroad Company, for the purpose of the Railway Labor Act.

2. On 25 July, 1939, an agreement was reached in collective bargaining between the Brotherhood and the Railroad Company, fixing seniority of employees in the coach shop and freight car department of the company. This is generally referred to as the "Lauderman Agreement."

3. Thereafter, on 24 August, a supplemental agreement was entered into "for the purpose of formulating the method to be used in implementing the agreement of 25 July, 1939." Under this supplement, representatives of management and of the Brotherhood were to meet and prepare the seniority roster in conformity with the agreement between the parties as applicable to the shops at Rocky Mount, N. C. This was done between 24 August and 15 September.

4. On 25 September, 1939, a meeting was held in Rocky Mount for the purpose of reviewing the work that had been done, and "the roster as

prepared was approved by the authorized representatives of the Brotherhood" and was also approved by the Railroad Company.

5. On 1 October, 1939, the seniority roster as thus approved by the representatives of management and the Brotherhood was posted on the Bulletin Board as the official roster for the Emerson Shops at Rocky Mount, N. C.

6. It is alleged that the plaintiffs' rights have been violated in the preparation of the roster by adding seniority accumulated in the car department to seniority acquired in the coach shop department, and thus preferring employees with such accumulated seniority over the plaintiffs; that "all such unlawful and wrongful conduct on the part of the defendant Lodge was committed and done, so far as these plaintiffs know, without the connivance, knowledge, or permission of the defendant Railroad Company," and that the "Railroad Company, not knowing the evil intent and unlawful conduct of the defendant Lodge, accepted said wrongful revised seniority list in good faith and posted it upon the Bulletin Board in good faith, not knowing that the list had been improperly and unlawfully revised in violation of the contract of employment by the defendant Railroad Company and the men in its coach shop and freight car department."

7. Written protest was filed to the roster by the plaintiffs herein on 5 October. Between the date of the receipt of said protest and the institution of this action on 27 October, 1939, "no action was taken with respect thereto."

Preliminary injunction was granted and continued to the hearing. On the final hearing the restraining order was dissolved and the action dismissed as in case of nonsuit.

Plaintiffs appeal, assigning error.

*B. H. Thomas and W. A. Lucas for plaintiffs, appellants.*
*F. S. Spruill for defendant Railroad Co., appellee.*
*Thomas W. Davis of counsel for defendant Railroad Co., appellee.*
*Itimous T. Valentine, Frank L. Mulholland, Clarence M. Mulholland and Willard H. McEwen for defendant lodge, appellee.*
*Mulholland, Robie & McEwen of counsel for defendant Lodge, appellee.*

STACY, C. J. Conceding the complaint may be interpreted as alleging arbitrariness or fraud on the part of defendant Lodge and mistake on the part of the Railroad Company in adopting the roster in question, which the defendants say is entirely too liberal, the record is wanting in sufficiency to support the allegation. Without this, it would seem that the plaintiffs are remitted to a pursuit of their protest, through the proper

channels, or to an action for damages against their own spokesman. *Ryan v. N. Y. Cent. R. Co.,* 267 Mich., 202, 255 N. W., 365. See *Reilly v. Hogan,* decided by the New York Supreme Court 15 January, 1942, 9 Labor Relations Reporter, 629. Assuming the seniority rights of the plaintiffs were fixed by the "Lauderman Agreement," as they allege, the subsequent delimitation of this agreement and its modification by the "authorized representatives of the Brotherhood" and the Railroad Company would seem to be within the apparent scope of collective bargaining. *Aden v. L. & N. R. Co.,* 276 S. W., 511.

The allegation of *Mala fides* is directed only against the local lodge and not against the Railroad Company. The plaintiffs have refrained from charging the latter with any mischief or wrong-doing. The record is barren of any evidence tending to show bad faith on the part of the lodge. The nearest premise suggestive of such a conclusion is the failure to hear the protest filed by the plaintiffs. No facts are stated, however, and none appear of record, which would seem to give to this circumstance the character of willful neglect or maliciousness. Indeed, the plaintiffs brought suit in less than thirty days after filing their protest and before any action was taken thereon.

The plaintiffs have grounded their action on the "Lauderman Agreement." In this they are well advised. The contract was made for the benefit of the employees in the coach shop and freight car department. *James v. Dry Cleaning Co.,* 208 N. C., 412, 181 S. E., 341. It was arrived at in collective bargaining between the B.R.C. of A. and the Railroad Company. *Donovan v. Travers,* 285 Mass., 167, 188 N. W., 705. The Brotherhood had the power, by agreement with the Railroad Company, to create seniority rights for "the craft or class of carmen, their helpers and apprentices, employees of the Atlantic Coast Line Railroad Company." *Hartley v. Brotherhood of R. & S. S. Clerks,* 283 Mich., 201, 277 N. W., 885. By the same token, and in like manner, it had the power, in good faith, to modify these rights in the interest of the larger good. Annotation 117, A. L. R., 823. In an action, as here, by individual beneficiaries of the original contract to restrain any such modification, it is necessary to allege and to prove that the Brotherhood acted arbitrarily or in reckless disregard of the plaintiffs' rights. The present record falls short of the prerequisites in this respect. *Franklin v. Penn-Reading Shore Lines,* 122 N. J. Eq., 205, 193 Atl., 712.

The argument of the case covered a wide range of principles thought to be applicable, but the allegations of the complaint and the admitted facts reduce it to a narrow compass. On the record as presented, the correct result seems to have been reached. At least we cannot say that error has been shown. The judgment will be upheld.

Affirmed.

BARNHILL, J., not sitting.