JUDY GRACE NEWSOME, ADMINISTRATRIX OF THE ESTATE OF FRANCIS RUDOLPH NEWSOME v. PRUDENTIAL INSURANCE COMPANY OF AMERICA

No. 68SC226

(Filed 2 April 1969)

**1. Insurance §§ 12, 27.5— credit life insurance — repossession of chattel after debtor's death**

Creditor relinquished its rights in the proceeds of a credit life insurance policy when, following the death of the insured debtor, it effected payment of its indebtedness by repossession of the chattel purchased by debtor under a conditional sales contract, and the creditor could not thereafter collect and retain for its own account the proceeds of the credit life insurance policy since it no longer had an insurable interest in the life of the debtor.

**2. Insurance § 27.5— credit life insurance — when liability is established**

Liability of the insurer under a credit life insurance policy is established at the moment of the insured debtor's death, and payment thereafter of the debt to the creditor, thereby terminating the creditor's insurable interest in the life of the debtor, does not terminate the insurer's liability under its policy of insurance.

**3. Insurance § 27.5— credit life insurance — payment of indebtedness after debtor's death**

When a creditor named as beneficiary of a credit life insurance policy effects payment of its indebtedness after the death of the insured debtor by repossessing the chattel purchased by the debtor under a conditional sales contract, thereby giving up its rights in the proceeds of the policy, the credit life insurance policy becomes one for the benefit of the insured collectible by his executors or administrators.

**4. Insurance § 27.5— credit life insurance — collateral security — type of liability**

Credit life insurance, as between the creditor and the insured debtor, is collateral security, but this does not place the insurance company in the position of a surety or in any sense render it secondarily liable on the debt, the insurance company becoming liable solely because, for a premium paid to it, it assumed the risk of the debtor's continued life and his death occurs while the insurance policy is in effect.

**5. Insurance § 27.5— credit life insurance — repossession of chattel subsequent to debtor's death — action by debtor's administratrix to recover policy proceeds**

When the debt to the creditor is satisfied subsequent to the insured debtor's death by repossession of the mortgaged chattel, the debtor's estate becomes subrogated to the rights of the creditor as beneficiary under the credit life insurance policy as against the insurer, and the debtor's administratrix may maintain an action against the insurer to recover the proceeds of the policy.

**6. Insurance § 27.5— credit life insurance — action by debtor's administratrix to recover policy proceeds**

The fact that the insured debtor's estate is not named directly as beneficiary in a credit life insurance policy is no bar to the right of the insured's administratrix to maintain an action upon the policy, since one for whose benefit a contract has been made may sue to enforce its terms even though he is not directly a party to the contract, the credit life insurance being for the benefit of insured's estate in that the proceeds of the policy are, by contractual and statutory provision, to be applied to discharge an indebtedness of the estate.

**7. Insurance § 27.5— credit life insurance — repossession of chattel subsequent to debtor's death — insurer's liability**

Insurer is liable upon its policy of credit life insurance where the creditor repossesses the mortgaged chattel subsequent to the insured debtor's death notwithstanding the policy provided that it should terminate automatically upon repossession of the chattel, since insurer's liability under the policy became fixed when the debtor died before repossession of the chattel occurred.

APPEAL by plaintiff from *Peel, J.,* 1 March 1968 Session of PITT Superior Court.

This is a civil action in which plaintiff administratrix seeks to recover $1,236.96, with interest, from defendant insurance company by reason of a Group Creditors Insurance Policy issued by defendant under which the life of plaintiff's intestate had been insured. Plaintiff's complaint, as amended and as supplemented by the exhibits attached thereto, alleged: On 23 June 1964 her intestate, Francis R. Newsome, purchased a 1961 Ford automobile from S & E Motor Service, Inc., under a written conditional sale contract by which the seller retained title for security purposes. Plaintiff's intestate made a down payment of $400.00 in cash and agreed to pay a time balance of $1,236.96 in monthly installments. The conditional sale contract expressly provided in line 4b that the time balance included a charge in the amount of $6.48 for creditor insurance on the life of the purchaser "(a)ccording to terms and conditions set forth in policy or certificate of insurance issued by the Prudential Insurance Company of America, Newark, New Jersey, under its Group Policy No. GL-360." The conditional sale contract further provided:

"9. CREDITOR INSURANCE ON LIFE OF PURCHASER — If a charge for Creditor Insurance on the life of the purchaser is included in item 4b on the face of this contract, (a) the purchaser acknowledges that said charge is included therein pursuant to his authorization that such insurance be procured, by and in the name of the seller or of the assignee of this contract, under a policy of the insurer designated in said item 4b, against

NEWSOME *v.* INS. CO.

the contingency of the purchaser's death occurring while the insurance is in force, such insurance to be for an amount equal to, and the proceeds thereof to be payable to and applied by the seller or assignee in payment of so much of the unpaid balance of the obligation hereunder as does not exceed the maximum amount of insurance applicable to an instalment obligation in accordance with the terms and conditions of the policy designated in said item 4d. . . ."

The purchaser was given a certificate containing the following:

"MR. FRANCIS R. NEWSOME

112 West Lane St.
Farmville, N. C.
6-23-64     No. S-8-52039
Life Insurance Charge
(included in instalment obligation)     $6.78

"THIS CERTIFIES that the life of the person named above, debtor under a certain instalment obligation as dated above, has become insured under the provisions of Group Creditors Insurance Policy No. GL-360 issued by The Prudential Insurance Company of America, Newark, New Jersey, herein called the Prudential, to

"GENERAL MOTORS ACCEPTANCE CORPORATION

(Herein called the Policyholder)

"If the debtor dies prior to the termination of insurance on his life as described below, the Prudential will, upon receipt of written proof, pay the insurance to the Policyholder to reduce or extinguish the balance remaining to be paid under said instalment obligation. The amount of insurance shall be an amount equal to the balance remaining to be paid under said instalment obligation. . . ."

The Group Creditors Insurance Policy No. GL-360, under which the certificate to plaintiff's intestate was issued, contained the following:

"THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

a mutial life insurance company

(Herein called the Insurance Company)

"In Consideration of the Application for this Policy and of the payment of premiums as stated herein, hereby insures the lives of certain debtors of GENERAL MOTORS ACCEPTANCE COR-

PORATION (Herein called the Creditor) and agrees, subject to the terms and conditions of this Policy, that immediately upon receipt of due proof in writing of the death of any insured debtor, the Insurance Company will pay to the Creditor the amount for which the debtor is insured. Such amount shall be applied by the Creditor towards the discharge of the indebtedness of the debtor to the Creditor remaining unpaid at the death of the debtor.

\* \* \*

"PLAN OF INSURANCE

"Each debtor who, on or after the effective date of this Policy, becomes obligated under the terms of one of the classes of obligations set forth below shall be eligible for insurance hereunder from the date such obligation is incurred.

\* \* \*

"Classes of obligations referred to above:

"(a) Individual purchases of any personal property sold by any dealers under instalment sale agreements purchased by the Creditor from said dealers.

\* \* \*

"The amount of insurance on the life of each debtor insured hereunder shall be the amount of unpaid balance remaining, from time to time while the insurance is in force, to be paid by the debtor under the terms of such instalment sale agreements or obligations purchased by the Creditor, provided, however, that the amount of insurance on the life of any one debtor shall not at any time exceed $2,500.

"DEBTORS INSURED

"The life of each debtor who becomes eligible hereunder by executing an obligation which contains his express authorization for the insurance and the terms of which include an identifiable charge therefor, shall be insured hereunder from the date he becomes eligible. . . ."

Plaintiff's complaint as amended further alleged that Francis R. Newsome died on 12 August 1964; that on the date of his death defendant's policy was in full force and effect; that defendant insurance company, though duly notified of the death, refused to pay the balance owing under the conditional sale contract; that in September 1964 the automobile was repossessed by General Motors Acceptance Corporation due to defendant's failure to pay the out-

standing balance under the conditional sale contract; that the amount due and owing under the conditional sale contract in the sum of $1,236.96 with interest from 12 August 1964 is now due from the defendant to the plaintiff as administratrix of the estate of Francis R. Newsome.

Defendant demurred to the amended complaint on the grounds that General Motors Acceptance Corporation, and not the plaintiff, is the real party in interest. From judgment sustaining the demurrer, plaintiff appealed.

*Lewis & Rouse, by John B. Lewis, Jr., for plaintiff appellant.*

*Emanuel & Emanuel, by Robert L. Emanuel, for defendant appellee.*

PARKER, J.

The question presented by this appeal is whether plaintiff is the real party in interest within the meaning of G.S. 1-57, and as such has the right to maintain this action.

Defendant insurance company contends that since both its insurance policy and the certificate which was issued thereunder expressly provide that payment of the insurance proceeds shall be made to GMAC, referred to as "Creditor" in the policy and as "Policyholder" in the certificate, GMAC is the sole and only party entitled to maintain any action against the defendant on account of the insurance policy involved in this action. We do not agree.

The only insurable interest which GMAC had in the life of plaintiff's intestate was as a creditor. G.S. 58-195.2 declares credit life insurance to be "insurance on the life of a debtor who may be indebted to any person, firm, or corporation extending credit to said debtor." In this case the insurance was provided under a policy of group life insurance. G.S. 58-210 provides that no policy of group life insurance shall be delivered in this State unless it conforms to one of the descriptions set forth in that section. G.S. 58-210(2) provides for issuance of:

"(2) A policy issued to a creditor, who shall be deemed the policyholder, to insure debtors of the creditor, subject to the following requirements:

\*          \*          \*

"d. The amount of insurance on the life of any debtor shall at no time exceed the amount owed by him which is repayable in installments to the creditor, or $5,000, whichever is less.

"e. The insurance shall be payable to the policyholder. Such payment shall reduce or extinguish the unpaid indebtedness of the debtor to the extent of such payment."

The Group Creditors Insurance Policy No. GL-360 issued by defendant with which we are concerned in this case conformed to the above statutory requirements. Under its provisions the amount of the insurance on the life of plaintiff's intestate was the amount of the unpaid balance remaining to be paid by him at the time of his death under the installment sale agreement which had been purchased by GMAC.

[1] When, following the death of the insured, GMAC elected to effect payment of its debt by repossession of the automobile under the retained title provisions of the conditional sale contract, GMAC thereby relinquished its rights in the proceeds of the policy, at least to the extent its indebtedness had been paid by the repossession. GMAC could not thereafter collect and retain for its own account the proceeds of the life insurance policy here in question. To permit it to do so would violate the long established public policy of this State which prevents one who lacks a legally recognized insurable interest in the life of another from taking out and enforcing for his own benefit a policy of insurance on such other person's life. *Wharton v. Insurance Co.*, 206 N.C. 254, 173 S.E. 338; *Slade v. Insurance Co.*, 202 N.C. 315, 162 S.E. 734.

[2, 3] Payment of the debt to GMAC and the termination of its insurable interest in the life of its debtor effected thereby did not, however, terminate defendant insurance company's liability under its policy of insurance. That liability had become established at the moment of the insured's death. When, subsequent to that time, GMAC effected payment of its indebtedness by repossessing the automobile and thereby gave up its rights in the proceeds of the policy to the extent of such payment, that policy became one for the benefit of the insured, collectible by his executors or administrators. "The creditor who is named as beneficiary loses all interest in the proceeds of the policy upon payment of the indebtedness and the policy then becomes one for the benefit of the insured, collectible by his executors or administrators." 5 Couch on Insurance 2d, § 29:114, p. 405, citing *Insurance Co. v. Whiteside,* 94 F. 2d 409. That this is the view followed by most of the jurisdictions in which the point has arisen, see cases collected in Annotation, 115 A.L.R. 741, at page 745.

In *GMAC v. Kendrick*, 270 Ala. 25, 115 So. 2d 487, the Alabama Supreme Court was concerned with a problem very similar to that

presented in the case presently before this Court. In that case the deceased had purchased an automobile under a conditional sale contract and had paid premiums for both life insurance and collision insurance. He was killed by a collision which demolished the automobile. GMAC collected from the life insurance company the full amount of the debt. The purchaser's estate then brought suit in equity against GMAC and against the collision insurer to compel GMAC to pay over to the plaintiff the amount it had received from the collision insurer, or, if it had received nothing under the collision policy, to require GMAC either to enforce the policy or to transfer it to the plaintiff. Both GMAC and the collision insurer demurred. On appeal the Alabama Supreme Court held that the demurrers were properly overruled, the Court stating: "(W)here a creditor on a life insurance policy claims the amount due after the death of the insured, the creditor may retain for himself only the amount of the debt due at the time of the death of the insured, together with any such amounts as he may have paid to preserve the policy, holding the proceeds in excess thereof as trustee of the estate of the insured."

In *Hatley v. Johnston*, 265 N.C. 73, 143 S.E. 2d 260, the North Carolina Supreme Court dealt with the identical group life insurance policy with which we are here concerned. In that case Parker, J. (now C.J.) said: "Credit life insurance, *as between the creditor and insured debtor*, is collateral security. Consequently, payment of the debt with credit life insurance, when the insured authorizes the creditor to procure the policy and pays the premium himself, is payment by the insured debtor, *just as payment with any collateral security is payment by the owner thereof.*" (Emphasis added.) In that case the Court was concerned with the right of the estate of the deceased debtor, who had been the initial purchaser of a truck under a conditional sale contract and whose life had been insured for the benefit of the creditor, to recover from a subsequent purchaser of the truck who had assumed the debt. The debt had been paid from proceeds of the life insurance policy. The Court held that the grantee, by assuming the debt, had become primarily liable for its payment, and that by payment of the debt from proceeds of insurance on the life of the original purchaser, the insured's estate became subrogated to obtain payment from the assuming grantee of the amount so paid. The Court distinguished the holding in *Miller v. Potter*, 210 N.C. 268, 186 S.E. 350, by pointing out that in that case the creditor, and not the insured debtor, had paid the premium for the life insurance coverage.

[4]     In the present case, as in *Hatley v. Johnston, supra*, the insured debtor paid the premium. As between the creditor and the

insured debtor the credit life insurance was collateral security, but this did not place the defendant insurance company in the position of a surety or in any sense render it secondarily liable on the debt. Indeed, the defendant insurance company did not become liable, either primarily or secondarily, on any debt of the debtor or by reason of any default of the debtor or of his estate in making payments to the creditor. Rather, it became liable solely because, for a premium paid to it, it had assumed the risk of the debtor's continued life and his death had occurred at a time the insurance policy was in effect.

[5] The Certificate of Insurance issued to the debtor as required by G.S. 58-211(7) provided:

> "If the debtor dies prior to the termination of insurance on his life as described below, the Prudential will, upon receipt of written proof, pay the insurance to the Policyholder to reduce or extinguish the balance remaining to be paid under said instalment obligation. . . ."

This agreement to pay the balance was in no way contingent upon whether the balance owed to the creditor might be otherwise satisfied subsequent to the time of death, either by repossession of the car by the creditor or by payment by the insured's estate. The insurer's obligation to pay arose immediately upon death of the insured. Therefore, when subsequent to that time the debt was satisfied by repossession of the car, the debtor's estate became subrogated to the rights of the creditor as beneficiary under the credit life insurance policy as against the insurer and became entitled to the proceeds of the policy. This is the risk for which the debtor paid "an identifiable charge" for the insurer to assume and this is the risk which the insurer agreed to assume.

[6] The fact that the insured's estate, plaintiff herein, is not named directly as beneficiary in the insurance policy issued by the defendant company, is no bar to plaintiff's right to maintain this suit. North Carolina has long recognized the right of one for whose benefit a contract has been made to sue to enforce its terms, even though he is not directly a party to the contract. *Lammonds v. Manufacturing Co.*, 243 N.C. 749, 92 S.E. 2d 143. Here, the creditor life insurance was clearly for the benefit of the insured's estate in that the proceeds of the policy were, by contractual and statutory provision, to be applied to discharge an indebtedness of the estate. If defendant insurance company fears it might incur double liability, both to the named beneficiary and to the insured's estate, it can protect itself

BROWN v. R. R. Co. AND PHILLIPS v. R. R. Co.

by way of interpleader. G.S. 1-73; 1 McIntosh, N. C. Practice and Procedure, § 728.

[7] Defendant contends, nevertheless, its demurrer should be sustained since, so defendant argues, it appears from the face of the complaint that the insurance policy sued on automatically terminated upon repossession of the chattel. In this connection the policy provided:

"The insurance on any debtor shall automatically terminate at the earliest of the following dates:

*       *       *

"(c) in the event of repossession of the property under the instalment contract on or before said sixtieth day after default, then on the fifteenth day after such repossession, unless during such fifteen day period the debtor redeems the repossessed property and the Creditor reinstates the instalment contract."

Defendant's argument ignores the fact that its liability in the present case had already become fixed *before* repossession of the chattel occurred. Defendant became liable under its policy at the instant the insured died. At that moment the policy was in full force and defendant's liability to make payments under its terms then accrued.

The judgment sustaining defendant's demurrer was in error and is

Reversed.

MALLARD, C.J., and BROCK, J., concur.